533 S.E.2d 894

**In the Matter of John Earl DUNCAN, Respondent.**

**No. 25127.**

Supreme Court of South Carolina.

Heard April 5, 2000.
Filed May 15, 2000.
Refiled June 12, 2000.

Wilburn Brewer, Jr., of Columbia, for respondent.

Henry B. Richardson, Jr. and Michael S. Pauley, of Columbia, for the Office of Disciplinary Counsel.

## ORDER

By opinion dated May 15, 2000, respondent was disbarred. *In the Matter of Duncan,* Op. No. 25127 (S.C. Sup.Ct. filed May 15, 2000). Respondent has filed a petition for rehearing asking the Court to delete the phrase "and Rule 7(a)(7) (wilfully violating a valid court order)" at the end of the second paragraph on page 3 of the opinion. Respondent maintains the reference to Rule 7(a)(7), RLDE, Rule 413, SCACR, in the Agreement for Discipline by Consent was a scrivener's error and the parties did not intend to agree that respondent wilfully violated a court order. The Office of Disciplinary Counsel does not oppose the issuance of an amended opinion deleting reference to Rule 7(a)(7), RLDE.

We deny the petition for rehearing, withdraw the opinion dated May 15, 2000, and substitute the following opinion from which reference to Rule 7(a)(7), RLDE, has been deleted.

IT IS SO ORDERED.

/s Jean H. Toal, C.J.

/s/ James E. Moore, J.

/s/ John H. Waller, Jr., J.

/s/ E.C. Burnett, III, J.

/s/ Costa M. Pleicones, J.

PER CURIAM:

In this attorney grievance proceeding, respondent admits that he has committed ethical violations and consents to the imposition of a sanction to be determined by this Court. We accept respondent's admission and find an indefinite suspension is the appropriate sanction. The suspension shall be retroactive to July 30, 1999, the date on which respondent was temporarily suspended from the practice of law.[1]

---

1. *In the Matter of Duncan,* 336 S.C. 148, 519 S.E.2d 561 (1999).

The facts as stated in the Agreement for Discipline by Consent are as follows. Respondent represented a client who was under investigation in Lexington County for several crimes, including murder. On or about May 29, 1995, the client was questioned by law enforcement personnel in the polygraph room of the Lexington County Law Enforcement Center. When the questioning was interrupted, respondent, who had been present in the Law Enforcement Center, but not in the polygraph room, entered the polygraph room and engaged in a conversation with his client. Because respondent and his client were alone in the polygraph room, there was an expectation of privacy for purposes of engaging in privileged and confidential attorney-client communications. However, unbeknownst to respondent, his conversation with the client was being recorded on videotape by personnel of the Lexington County Sheriff's Department who were stationed in an adjacent room. Immediately after leaving the polygraph room, respondent's client was arrested on the charge of murder. He was later charged with first degree burglary, armed robbery, assault and battery with intent to kill and possession of a firearm during the commission of a violent crime, all in connection with the matters under investigation at the time of the unauthorized taping.

Respondent did not learn of the unauthorized taping until August 1997. Respondent obtained a copy of the tape from the public defender who, along with another court appointed attorney, had taken over representation of the client. Respondent contacted a reporter for a local television station about the tape. Respondent gave the tape to the reporter, or caused the tape to be given to the reporter, in reliance on an agreement between the two that the television station would copy the tape, but that only the video portion of the tape would be broadcast. The reporter also agreed not to reveal the source from which the copy of the tape was obtained.

Respondent gave the tape to the reporter with knowledge that the tape and the news reports related thereto would most likely be broadcast extensively in the midlands of South Carolina, including Lexington County, where the client would eventually be tried, as well as throughout the State. It was respondent's intent, in giving the tape to the reporter, to influence the upcoming trial to the client's advantage and to

make known the actions of the Lexington County Sheriff's Department in taping his client. Following broadcast of the tape, respondent provided an affidavit for use in the client's trial wherein he stated he did not believe that either the State or the client could receive a fair trial in Lexington County as a result of the release of the tape to the news media. Respondent acknowledges that the release of the tape created considerable additional work for the parties and the courts of this State.

On or about March 18, 1998, respondent was called to testify before a federal grand jury which was conducting an investigation into whether the unauthorized taping by personnel of the Lexington County Sheriff's Department violated federal wiretapping laws. While under oath, respondent knowingly made a false material declaration to the grand jury. Specifically, respondent testified that he did not provide the tape to the media and that he did not know who provided the tape to the media. On or about July 29, 1999, respondent pled guilty to one count of making a false declaration to a grand jury in violation of 18 U.S.C. § 1623. He was sentenced to four months in prison, four months under home confinement, and two years of supervised release, and fined $33,386.92.

Respondent admits that he has violated the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (violating the Rules of Professional Conduct, Rule 407, SCACR); Rule 7(a)(4) (conviction of a serious crime); Rule 7(a)(5) (engaging in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute); and Rule 7(a)(6) (violating the oath of office).

Respondent also admits that he has violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 3.3(a)(1) (making a false statement of material fact to a tribunal); Rule 3.6(a) (making an extrajudicial statement about a case that the lawyer would expect to be disseminated by the media knowing that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter); Rule 8.4(a) (violating or attempting to violate the Rules of Professional Conduct); Rule 8.4(b) (commission of a criminal act which reflects adversely on the lawyer's honesty,

trustworthiness or fitness as a lawyer in other respects); Rule 8.4(c) (engaging in conduct involving moral turpitude); Rule 8.4(d) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and Rule 8.4(e) (engaging in conduct that is prejudicial to the administration of justice).

It is therefore ordered that respondent shall be indefinitely suspended from the practice of law in this State. This suspension shall be retroactive to July 30, 1999, the date on which he was temporarily suspended from the practice of law. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR.

INDEFINITE SUSPENSION.